[Crim. No. 2164.  Third Dist.  Mar. 10, 1950.]

THE PEOPLE, Respondent, v. WOODROW LOUIS BURATTI, Appellant.

McAllister & Johnson, Walter C. Frame and Neil R. McAllister, Jr., for Appellant.

Fred N. Howser, Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

ADAMS, P. J.—Defendant was charged with four burglaries of rooms at El Rancho Motel, in Yolo County, on four different dates, and the taking therefrom of various articles belonging to occupants of the rooms. Nearly all of the loot was found in defendant's possession or was shown to have been disposed of by him. A jury found him guilty on all four counts, his motion for a new trial was denied, and this appeal is taken from the judgment of conviction and the order denying a new trial.

Grounds for reversal urged are that the evidence was not sufficient to sustain the verdict, and that the trial judge and the prosecuting attorney were guilty of misconduct during the trial.

The evidence shows that between 7:30 p.m. November 29, and 1 a.m. November 30, 1948, the room occupied by one Joseph F. Reed was burglarized and a watch, a Masonic ring, and a jewel box containing cuff links and studs and a Chinese jade ring taken. The jewel box and some of its contents were found in defendant's possession at the time of his arrest. At that time defendant told the deputy sheriff that same were his father's and came from behind the bar at his father's place in Petaluma. The jade ring was sold by defendant to a Sacramento jeweler, Buratti signing his name in the jeweler's record book as James Fargen. At the trial defendant testified that he received the jade ring and the jewel box with its contents from Fargen, at a bar in Roseville, and that Fargen was a friend. But Fargen was not produced as a witness, and defendant testified he was unable to produce him.

Between the hours of 7 p.m. December 31, 1948, and 1:30 a.m. January 1, 1949, the room occupied by Adolph Memmer at El Rancho Motel was entered and a shotgun in a leather

case, a clock, and a manicure set were taken therefrom. These articles were also found in defendant's possession, and he stated to one officer at the time of his arrest that the gun had been left with him by a man whose identity he did not know. Defendant offered to sell the gun to another officer, stating that it had been left in his care by a stranger who had asked him for a ride. Regarding the clock and the manicure set he first stated that they were his father's property, and had been taken from his father's bar in Petaluma; but at the trial he testified that they had been received from Fargen.

Between the hours of 7:30 and 10 p. m. on January 5, 1949, the room of Ralph Brown at El Rancho Motel was burglarized and a small radio taken. This radio was found in defendant's room. He first stated that it had been purchased at a pawn shop in San Rafael, but later stated that he had purchased it at a Sacramento music store before Christmas, 1948. At the trial he testified that he received it from Fargen.

Between the hours of 6 and 7:15 p. m. on February 2, 1949, the room of a Mrs. Campbell at El Rancho Motel was looted of a purse and a suitcase. A topaz ring contained therein was found in defendant's possession, and a wrist watch worth $75 was sold by him under his own name for $20 to the same jeweler to whom he sold the jade ring. Regarding those articles defendant stated to arresting officers that they had been found by him in the middle of the road where he was parked; but to another officer he said they were taken from his father's bar.

Appellant's contention is that the foregoing evidence establishes only that he was guilty of receiving stolen goods, but is insufficient to prove that he is guilty of burglary. Generally speaking, it may well be said that proof of possession of stolen goods, standing alone, will not support a conviction of burglary; but where proof of possession is accompanied by proof of false and conflicting statements as to how such goods came into defendant's possession, the use by him of fictitious names in disposing of them, and their sale for obviously inadequate prices, such evidence is sufficient to sustain a conviction for burglary. In *People* v. *Wade*, 76 Cal.App.2d 430, 431 [173 P.2d 54], the court said: "The law is established in California that possession of stolen property coupled with false statements as to the manner in which the property came into defendant's possession is sufficient evidence to sustain a conviction of burglary. (*People* v. *McCann*, 34 Cal.App.2d 376, 377 [93 P.2d 643].)" Also, see, *People* v. *Taylor*, 4 Cal.App.2d

214, 217 [40 P.2d 870]; *People* v. *Russell*, 120 Cal.App. 622 [8 P.2d 209]; *People* v. *McCann*, 34 Cal.App.2d 376, 378 [93 P.2d 643]; *People* v. *Carroll*, 79 Cal.App.2d 146, 148 [179 P.2d 75]; *People* v. *Lang*, 142 Cal. 482, 484 [76 P. 232]; *People* v. *King*, 8 Cal.App. 329, 332 [96 P. 916]; *People* v. *Wing*, 23 Cal.App. 50, 51 [137 P. 47]; *People* v. *Majors*, 47 Cal.App. 374, 375 [190 P. 636]; *People* v. *Hunter*, 59 Cal. App. 444, 446 [210 P. 968]; *People* v. *Russell*, 34 Cal.App.2d 665, 669 [94 P.2d 400].

Appellant's assigned error regarding alleged misconduct of the trial judge is based upon certain questions which the judge directed to him which appellant asserts indicated that the judge did not believe defendant's testimony. A reading of the transcript, however, convinces us that the trial court's queries were not prejudicial to the witness, but were calculated and intended to give him an opportunity to explain, if he could, why he had made admittedly contradictory statements regarding how the stolen goods had come into his possession. Prior to any inquiry by the judge, defendant, under questioning by his own counsel, admitted that he had made the statements to the officers to which they had testified, and was then asked: "Q. And the statements that were testified to by the officer were made by you? A. That's right. Q. Were those true or untrue? A. They were untrue."

On cross-examination by the district attorney defendant then admitted that he was "lying" when he made the statements to the officers which were in conflict with his own testimony at the trial, and had "lied" in making six or seven statements as to how certain stolen articles came into his possession. He also admitted that he had never told them anything about Fargen before the trial.

No objection to the foregoing cross-examination by the district attorney was made by defendant, nor is it assigned as error or prejudicial.

The trial court then interrogated defendant as to his reasons for lying to the officers, and why he was now, for the first time, making claims that certain stolen articles came from Fargen; also as to conflicting statements made at the trial regarding how he came into possession of the jade ring. The court, in its interrogation, used the word "lied," and had the witness not previously admitted that he had lied, the use of this word by the court might be claimed to have been prejudicial to the witness as indicating that the court was calling him a liar. The court also asked him to explain his reasons

for lying to the officers, and how he reconciled certain conflicting statements made at the trial. The court was, therefore, doing no more than it was justified in doing—giving defendant an opportunity to explain his reasons for making his untrue statements to the officers and to reconcile, if he could, the apparent conflicts in his statements made at the trial.

In *People* v. *Butterfield,* 40 Cal.App.2d 725, 731 [105 P.2d 628], where it was contended that a trial judge was guilty of prejudicial misconduct in cross-examining the defendant, this court referred to section 1439 of the Penal Code which authorizes a trial judge to make such comment on the evidence and the testimony and credibility of any witness as in its opinion is necessary for the proper determination of the case, and then said:

". . . A trial judge certainly is authorized on cross-examination of a defendant to call his attention to apparently conflicting statements which he has made so as to give him an opportunity to explain or reconcile them if possible. We are of the opinion it is not only the privilege but the duty of a trial judge to ask questions of any witness in a fair and discreet way to elicit facts which are material to a just determination of the case. It has been held the judge is not a mere umpire for the determination of legal questions which are involved in the trial of a case. Of course a judge should not examine a defendant on trial for a crime in such a manner as to give the jury an impression that he thinks the accused is guilty of the charge and should be convicted. It is apparent such conduct would nullify the right of trial by jury. Upon examination of the record in the present case we find no evidence of such conduct on the part of the trial judge. It appears that in good faith the judge upon two or three occasions, in a fair and discreet manner, inquired of the defendant if he had not previously made statements in conflict with the testimony which he gave at the trial. In each instance the court quoted former statements of the defendant which do appear to be in conflict with his testimony at the trial. At least these apparent conflicts of evidence did require explanation or reconciliation. We find no prejudicial misconduct of the trial judge in his cross-examination of the defendant."

The Butterfield case was cited with approval in *Estate of Dupont,* 60 Cal.App.2d 276, 290 [140 P.2d 866], where numerous supporting decisions are cited. In *People* v. *Coleman,* 53 Cal.App.2d 18, 29 [127 P.2d 309], where appellant contended

that the trial court had questioned him to his prejudice, the court said:

"All questions propounded were judicial in purpose (*People* v. *Patubo,* 9 Cal.2d 537 [71 P.2d 270, 113 A.L.R. 1303]) and related to matters upon which defendant had been interrogated by his counsel; they were questions that would have been proper if asked by either defendant's counsel or the district attorney. (*People* v. *Ramos,* 3 Cal.2d 269 [44 P.2d 301].) 'A trial judge certainly is authorized on cross-examination of a defendant to call his attention to apparently conflicting statements which he has made so as to give him an opportunity to explain or reconcile them if possible.' (*People* v. *Butterfield,* 40 Cal.App.2d 725, 731 [105 P.2d 628].)"

In *Burns* v. *California Milk Transport,* 89 Cal.App.2d 70, 77 [200 P.2d 43], *Estate of Dupont* was quoted regarding the duty of a trial court to bring out the facts clearly. And in that case the court also said that the record did not show any objection to the lines of questioning by the court, and, as no objection to its conduct was made in the trial court, it was too late to urge it as error for the first time on appeal, citing *People* v. *Ottey,* 5 Cal.2d 714, 721 [56 P.2d 193]; *Karwoski* v. *Grant,* 30 Cal.App.2d 171, 178 [85 P.2d 944]; *People* v. *Jenkins,* 118 Cal.App. 115, 119 [4 P.2d 799]. Also, see, *People* v. *Mendez,* 193 Cal. 39, 47-48 [223 P. 65]; *People* v. *Ferrara,* 18 Cal.App. 271 [122 P. 1089]; *People* v. *Johnson,* 57 Cal.App. 391, 394 [207 P. 281]; *People* v. *Galuppo,* 81 Cal.App.2d 843, 848 [185 P.2d 335]; *People* v. *Skeen,* 93 Cal.App.2d 489, 493 [209 P.2d 132] (hearing in Supreme Court denied).

Here no objection to the questions asked by the court was made during the trial, no motion was made to strike them out, and there is nothing to indicate that they were made in an unfair or indiscreet manner; and, in accordance with the decisions in the foregoing cases, it is too late for defendant to urge the conduct of the trial judge as prejudicial misconduct on this appeal.

The final contention of defendant, regarding alleged prejudicial misconduct of the district attorney, is that during the examination of defendant the district attorney grasped his hands to his head, tore his hair and made noises. Defendant's counsel assigned this as misconduct and asked the court to instruct the jury to disregard it. The court said it had observed nothing to admonish the jury about. There is nothing in the record to show such alleged conduct; no affidavit was

filed, and as the trial judge observed nothing calling for an admonition, we find no prejudicial misconduct and no reversible error. See *People* v. *Averett*, 54 Cal.App.2d 625, 629 [129 P.2d 739].

The judgment and order denying a new trial are and each of them is affirmed.

Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 6, 1950.